# IN THE COURT OF APPEALS OF IOWA

No. 18-2181
Filed November 27, 2019

**DOROTHY HOLLINGER,**
    Plaintiff-Appellee,

**vs.**

**STATE OF IOWA,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Karen A. Romano, Judge.

The State of Iowa appeals the order entering judgment for Dorothy Hollinger on her claim of employment discrimination based on disability. **AFFIRMED.**

Thomas J. Miller, Attorney General, and Molly M. Weber, Assistant Attorney General, for appellant State.

Melissa C. Hasso and Mark D. Sherinian of Sherinian & Hasso Law Firm, Des Moines, for appellee.

Heard by Doyle, P.J., and Tabor and Schumacher, JJ.

**DOYLE, Presiding Judge.**

Dorothy Hollinger sued the State of Iowa for employment discrimination based on disability. She appealed after the district court entered a directed verdict for the State after finding she is not a person with a disability under the Iowa Civil Rights Act (ICRA). We reversed the ruling on public policy grounds and remanded the case for a new trial. *Hollinger v. State*, No. 15-2012, 2016 WL 7395738, at *4-5 (Iowa Ct. App. Dec. 21, 2016), *further review denied* (Mar. 30, 2017). In this second appeal, the State challenges the district court's finding on remand that Hollinger proved her disability discrimination claim.

**I. Background Facts and Proceedings.**

For more than fourteen years, Hollinger worked as a residential treatment worker at Glenwood Resource Center (Glenwood), a State-operated residential treatment center. She sustained an injury at work in 2011 that prevented her from working until May 2012. After Hollinger's doctor imposed permanent restrictions on squatting, kneeling, and crawling in October 2012, Glenwood terminated her employment.[1]

---

[1] As we described in Hollinger's prior appeal,

> It was Glenwood's practice to only accommodate employees with temporary restrictions because it believed employees with permanent restrictions were unable to perform the essential functions of their jobs. Glenwood did not allow employees with permanent restrictions to work, instead instructing those employees to apply for long-term disability benefits. Once the employees were approved for long-term disability benefits, Glenwood terminated their employment. In accordance with this practice, Glenwood terminated Hollinger's employment after she was approved for long-term disability benefits.

*Hollinger*, 2016 WL 7395738, at *1.

In October 2013, Glenwood offered Hollinger a position as an activities aide after she became available for recall. But Glenwood hinged the position on Hollinger's ability to perform the essential functions of the job. Glenwood asked Hollinger to have her doctor complete a form listing the twelve essential functions of the position and asking for an opinion on whether Hollinger could complete them, was able to complete them with accommodation, or was unable to complete them. In filling out the form, the doctor marked that Hollinger could perform ten of the essential functions without accommodation and the remaining two with accommodation. Although the form does not list squatting or kneeling as essential functions, the doctor wrote that Hollinger "cannot squat or kneel" and "cannot get on hands and knees." After receiving the completed form, Glenwood sent Hollinger a letter stating, "Based on the information received from your physician, you are not able to perform the essential functions of this position."

Hollinger sued the State for discrimination in employment based on her disability or perceived disability. The district court granted a directed verdict for the State because it determined that Hollinger does not have a disability under the ICRA. We reversed on appeal and remanded to the district court for a new trial. *Hollinger*, 2016 WL 7395738, at *5.

Following remand, the parties submitted the case to the court for a determination on the record from the first trial. The court found Hollinger prevailed on her claim of employment discrimination based on disability, awarding her $40,858.78 in economic damages and $200,000 in emotional distress damages. It also awarded her attorney fees.

**II. Scope and Standard of Review.**

We review judgment entered after a bench trial for correction of errors at law. *See Metro. Prop. & Cas. Ins. Co. v. Auto-Owners Mut. Ins. Co.*, 924 N.W.2d 833, 839 (Iowa 2019). The district court's findings are binding on us if supported by substantial evidence. *See id.* There is substantial evidence supporting a fact finding if the court can reasonably infer the finding from the evidence presented. *See Hutchison v. Shull*, 878 N.W.2d 221, 229-30 (Iowa 2016).

**III. Analysis.**

The ICRA prohibits employment discrimination based on disability. *See* Iowa Code § 216.6(1)(a) (2013). The ICRA defines a "disability" as the physical or mental condition of a person that constitutes "a substantial disability." *Id.* § 216.2(5). The statute does not define the term "substantial disability," but the administrative regulations implemented by the Iowa Civil Rights Commission list three categories of people protected from disability discrimination under the ICRA. Iowa Admin. Code r. 161-8.26(1); *see also Goodpaster v. Schwan's Home Serv., Inc.*, 849 N.W.2d 1, 6 n.1 (Iowa 2014) (stating that rule 161-8.26 "is intended to provide the relevant definition of those persons covered by the ICRA"). The ICRA protects those who (1) have "a physical or mental impairment which substantially limits one or more major life activities"; (2) have "a record of such an impairment"; or (3) are "regarded as having such an impairment." Iowa Admin. Code r. 161-8.26(1). The district court found that Hollinger fits all three categories.

The State does not dispute that Hollinger has a physical impairment but challenges the finding that Hollinger's impairment substantially limits a major life activity. The administrative rules define "major life activities" as "functions such as

caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Iowa Admin. Code r. 161-8.26(3). Squatting and kneeling are not included in this list, but our supreme court has recognized that the list is not exhaustive and may include functions like sitting and standing. *See Bearshield v. John Morrell & Co.*, 570 N.W.2d 915, 919 (Iowa 1997).

Whether Hollinger's impairment substantially limits one or more major life activities was the "fighting issue" in the first appeal. *Hollinger*, 2016 WL 7395738, at *3. There, we reviewed the district court's directed verdict ruling, which relied on *Bearshield* to conclude that squatting and kneeling are not major life activities. *Id.* at *3-4. In *Bearshield*, an employee with degenerative arthritis claimed her employer discriminated against her based on disability, alleging her arthritis substantially limited "her ability to care for herself, walk, and work." 570 N.W.2d at 917-19. The supreme court analyzed the employee's claim in two parts, first considering whether the employee was limited in a major life activity *other than* working—her ability to care for herself and walk—before considering whether she was limited in the major life activity of working.[2] *Id.* In the first part of its analysis, the court found the employee failed to show she was substantially limited in her ability to care for herself or walk, citing her testimony "that she could do her normal activities at home."[3] *Id.* at 920. The final sentence of that section of analysis

---

[2] In the second part of this analysis, the court reversed the district court's grant of summary judgment for the employer because a fact question existed on whether the employee's impairment substantially limited her ability to work. *Bearshield*, 570 N.W.2d at 920-22.

[3] The court noted only one exception; the employee needed assistance in doing laundry because the laundry appliances were in the basement and, although she could go up and down stairs, doing so caused her pain. *Bearshield*, 570 N.W.2d at 920.

states, "Although [the employee] is totally precluded from squatting and twisting, we do not view these movements as *major* life activities." *Id.* From this statement, the district court determined it was "bound to follow the holding of *Bearshield* that squatting is not a major life activity under the [ICRA]" and that "[t]he same logic leads the court to conclude that kneeling is not a major life activity under the Iowa Act."

In the first appeal, we disagreed with the result reached by the district court and reversed. *Hollinger*, 2016 WL 7395738, at *4. We noted that our supreme court recently reiterated "the ICRA's 'general proscription against discrimination' and our history of relying on that provision 'to adopt broad definitions to eliminate employment discrimination.'" *Hollinger*, 2016 WL 7395738, at *4 (quoting *Goodpaster*, 849 N.W.2d at 9). It also contrasted the ICRA's mandate to construe its provisions broadly to effect its purposes with the narrow interpretations of the ADA adopted by the Federal courts, which ultimately led Congress to amend the ADA. *Id.* (citing *Goodpaster*, 849 N.W.2d at 9-10). On this basis, we declined to hold that squatting and kneeling are not major life activities. *Id.*

> [A]pplying the *Bearshield* holding to exclude Hollinger from the definition of a person with a disability results in the ICRA providing less protection to Iowa workers than is provided under federal law. This result goes against the legislature's express statement that the ICRA 'shall be construed broadly to effectuate its purposes' of eliminating unfair and discriminatory practices in employment. We are to interpret the . . . administrative rules implementing chapter 216 in the same manner. Because an interpretation of the ICRA that excludes those impaired from performing acts such as squatting, kneeling, or crawling does not broadly effectuate the purposes of the ICRA, we decline to apply the statement in *Bearshield* relied on by the district court to the case at bar.

*Id.* (footnote and internal citations omitted).

The State argues that on remand the district court misinterpreted our decision in finding squatting and kneeling are major life activities. It claims that our decision did not decide that squatting *is* a major life activity, only that the district court *could have found* it was a major life activity despite *Bearshield*. Hollinger, in contrast, claims that our prior decision is the law of the case, which the trial court was bound to follow. She argues that the State is "simply dissatisfied" with the result in the first appeal "and wants a second bite at the same issue."

Under the law-of-the-case doctrine,

> an appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case. When the law-of-the-case doctrine applies, the legal principles announced and the views expressed by a reviewing court in an opinion, right or wrong, are binding throughout further progress of the case. The doctrine generally applies only to issues raised and passed on in a prior appeal. However, the doctrine extends to matters necessarily involved in the determination of a question settled in a prior appeal for purposes of subsequent appeals.

*Lee v. State*, 874 N.W.2d 631, 646 (Iowa 2016) (cleaned up).

We agree with Hollinger that our prior decision settled the question. An activity is either a major life activity or it is not. Determining whether a broad category of activity meets the statutory definition of major life activity is a question of law.[4] *See Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1142 (10th Cir. 2011); *cf. Consol. Freightways, Inc. v. Cedar Rapids Civil Rights Comm'n*, 366 N.W.2d 522, 526 (Iowa 1985) (stating the meaning of "disability" under city ordinance is a question of law); *Willis v. City of Des Moines*, 357 N.W.2d 567 (Iowa

---

[4] *See generally Bragdon v. Abbott*, 524 U.S. 624, 637-39 (1998) (analyzing whether the affected activity constitutes a major life activity under the ADA by analyzing the ADA and the administrative regulations relating to it).

1984) (noting that interpretation of a statute or ordinance is a question of law). In contrast, determining whether an individual's impairment substantially limits a major life activity is a question of fact determined case by case.[5] *See Carter*, 662 F.3d at 1142; *cf.* *Bearshield*, 570 N.W.2d at 918 ("The issue of whether an individual has a disability is a factual question to be decided on a case-by-case basis."). Our decision in the first appeal rejected a general exclusion of squatting and kneeling as major life activities rather than a finding that Hollinger is not substantially limited in squatting or kneeling. Thus, the district court correctly interpreted our holding in the first appeal to determine that squatting and kneeling are major life activities under the ICRA.

After finding squatting and kneeling are major life activities, the district court then made an individualized assessment to determine whether Hollinger's impairment substantially limits those major life activities. Because neither the ICRA nor the administrative rules governing it define the term "substantially limits," the district court looked to the Federal regulations interpreting the ADA for guidance. It observed that under the amendments to the ADA, the term "substantially limits" is not a demanding standard and should not require extensive analysis. It also noted four criteria to consider in determining whether an impairment substantially limits a major life activity: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; (3) the permanent or long term impact, or the expected permanent or long term impact of

---

[5] *See generally Bragdon*, 524 U.S. at 639-42 (making an individualized assessment of the facts before it to determine whether the plaintiff's impairment substantially limited a major life activity).

or resulting from the impairment; and (4) whether the individual is impaired during episodes or flare-ups even if not impaired during remission. *See Goodpaster*, 849 N.W.2d at 11-12. The court found the evidence shows that Hollinger's impairment substantially limits her ability to squat, kneel, and crawl; that engaging in these activities causes her unbearable pain; that Hollinger is substantially limited in these activities compared to the general population; and that her impairment is permanent. It therefore determined that Hollinger is a person with a disability under the ICRA. We find no error.

We affirm the district court's determination that Hollinger is a person with a disability under the ICRA. Because we can affirm the judgment on this basis, we need not consider the State's arguments about the findings that Hollinger has a record of a disability and that Glenwood regarded her as having a disability.

**AFFIRMED.**